[Cite as *State v. Martinez*, 2020-Ohio-4883.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 14-19-28

    v.

SIDNEY B. MEJIA,                       O P I N I O N

    DEFENDANT-APPELLANT.

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 14-19-29

    v.

MARVIN MARTINEZ,                  O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeals from Union County Common Pleas Court**
**Trial Court Nos. 18CR0185 and 18CR0186**

**Judgments Affirmed**

**Date of Decision:   October 13, 2020**

---

APPEARANCES:

    *Donald Gallick* **for Appellants**

    *Raymond Kelly Hamilton* **for Appellee**

Case Nos. 14-19-28, 14-19-29

**SHAW, P.J.**

{¶1} Defendants-appellants, Sidney Mejia ("Mejia") and Marvin Martinez ("Martinez") (collectively, "appellants"), bring these appeals from the October 18, 2019 judgments of the Union County Common Pleas Court sentencing both of them to an aggregate 9 year prison term after they were convicted in a jury trial of Felonious Assault in violation of R.C. 2903.11(A)(2), with firearm specifications pursuant to R.C. 2941.145, and Assault in violation of R.C. 2903.13(A). Mejia and Martinez were tried together because their charges arose from the same incident on the same date, they contained the same evidence, and they were perpetrated against the same victim. On appeal, Mejia and Martinez argue that there was insufficient evidence presented to convict them, that their convictions were against the manifest weight of the evidence, and that the convictions violate multiple double jeopardy protections.

*Background*

{¶2} On July 11, 2018, just before 9 p.m., Ervin W. took his dog outside in the front of his house. While in his driveway, Ervin was approached by three males, all wearing black pants and tan or khaki-colored shirts. One of the males, a short-haired individual later identified as Martinez, asked Ervin about his electric provider, which Ervin thought was odd because his development was very new.[1]

---

[1] As will be discussed, *infra*, appellants dispute the exact nature of the exchange that occurred with Ervin.

-2-

Ervin responded that he did not believe he had a choice in electric providers and the men began walking away.

{¶3} A moment later, Martinez stated that he had one more question and he approached Ervin again, pulling a gun from the back of his pants. Martinez then told Ervin that the three men needed to get into the house. Ervin started to go toward the house but he stopped and turned around, and as he turned he was hit in the face with a gun and he fell. Martinez grabbed Ervin by the arm and "yanked" him up. Ervin was bleeding from various cuts and he saw that the long-haired individual, later identified as Mejia, had a gun pointed at his chest. Ervin reached out and grabbed Mejia's gun and they struggled briefly. Ervin lost his balance in the struggle and went down to the ground again. This time, Ervin began to yell for his wife Barbara, who was inside, to call 9-1-1. Ervin also yelled for help multiple times. The three men then ran off and got into a red Nissan SUV. Notably, Ervin indicated that the third man, who was not identified until trial by Martinez, never approached from the edge of the driveway.

{¶4} Barbara called 911 and the authorities responded. A neighbor also came over after hearing the commotion. A plastic bag containing duct tape was left in the driveway, along with five black zip-ties. Both Ervin and his neighbor, who lived two houses over, had video of the three men walking in front of their homes on their "Ring" security camera footage. On Ervin's security footage, one person

can actually be overheard stating something regarding electricity, but they were outside the frame of the camera.

{¶5} Nearby license plate readers caught the license plate of the red SUV, and it was traced to its owner, Rebecca Vance, who was the mother of several of Martinez's children. Once the vehicle was located at Vance's registered address, officers went to the residence. Martinez answered the door and he agreed to allow law enforcement to search the residence. Officers located Mejia in the basement along with a firearm, which had blood on it. The blood was later tested and found to be consistent with Ervin's DNA. There was also blood on Mejia's pants that was tested and found to be consistent with Ervin's DNA. Officers also located white zip-ties and latex gloves in the SUV. Martinez's black pants and tan/khaki-colored shirt were located upstairs, and another firearm was located in the bedroom of his children.

{¶6} Mejia and Martinez were both indicted for (Count 1) Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, (Count 2) Felonious Assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, (Count 3) Attempted Kidnapping in violation of R.C. 2923.02 and 2905.01(B)(2), a felony of the second degree, (Count 4) Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, (Count 5) and Possessing Criminal

Tools in violation of R.C. 2923.24(A), a felony of the fifth degree.[2] Counts 1 through 4 all contained 3-year firearm specifications pursuant to R.C. 2941.145(A). As the charges against Mejia and Martinez involved the same victim, the same evidence, and the same incident, the cases were consolidated for trial.

{¶7} The cases proceeded to a jury trial, which was held July 16, 2019, to July 19, 2019. After all of the evidence and exhibits were presented, the jury found Mejia and Martinez guilty of the lesser-included offense of misdemeanor Assault in Count 1, guilty of Felonious Assault as indicted in Count 2, including the firearm specification, and not guilty of the remaining charges. Mejia and Martinez were each ordered to serve 6 year prison terms on the Felonious Assault convictions and consecutive 3-year prison terms for the firearm specifications for 9-year aggregate prison terms. Both Mejia and Martinez appeal from their judgment and sentence. Their cases have been consolidated on appeal and they assert the same assignments of error for our review.

**Mejia's and Martinez's First Assignment of Error**
**The trial court erred by denying the Criminal Rule 29 motions as the convictions are not supported by sufficient evidence as the testimony shows an unindicted individual committed the assault and the State failed to meet the burden of production for *mens rea* required in a complicity conviction.**

---

[2] The superseding indictment containing the charges listed also contained a charge of Receiving Stolen Property in violation of R.C. 2913.51(A), a felony of the fourth degree. However, as the Receiving Stolen Property charge was added so close to trial, it was not tried at the same time as the remaining charges and it has no further relevance to this case.

**Mejia's and Martinez's Second Assignments of Error**
**The convictions are against the manifest weight of the evidence as the element of knowingly complicit was not proven beyond a reasonable doubt.**

**Mejia's and Martinez's Third Assignments of Error**
**The convictions for Felonious Assault violate the Double Jeopardy protections of the constitutions of Ohio and of the United States as appellant[s] w[ere] found not guilty of the exact same offense, against the exact same victim, involving the exact same *mens rea* and *actus reus*.**

**Mejia's and Martinez's Fourth Assignments of Error**
**The Double Jeopardy protections of the Ohio and United States Constitution were violated through the plain error of imposing multiple sentences for a single offense.**

*First Assignments of Error*

{¶8} In their first assignments of error, Mejia and Martinez argue that the trial court erred by denying their Crim.R. 29 motions for acquittal because they claim that the State presented insufficient evidence to convict them of Assault and Felonious Assault with a firearm specification regardless of whether they were convicted for being the principal offender or complicit with the principal offender.

Standard of Review

{¶9} An appellate court reviews the denial of a Crim.R. 29 motion for acquittal under the same standard used to review a sufficiency of the evidence claim. *State v. Anders*, 3d Dist. Hancock No. 5-16-27, 2017-Ohio-2589, ¶ 32, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is

to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Pountney*, 152 Ohio St.3d 474, 2018-Ohio-22, ¶ 19 (an appellate court's function in a sufficiency review is not to determine if the evidence *should* be believed). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*., following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, ¶ 317. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.); *see also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence.")

### Controlling Authority

{¶10} In this case, Mejia and Martinez were convicted of Felonious Assault in violation of R.C. 2903.11(A)(2), which reads, "No person shall knowingly * * *

[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" Pursuant to R.C. 2901.22(B) "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." Mejia and Martinez were also convicted of misdemeanor Assault in violation of R.C. 2903.13(A), which reads "No person shall knowingly cause or attempt to cause physical harm to another[.]"[3]

{¶11} Importantly, the State alleged that even if either Mejia or Martinez were not the direct perpetrators of the charges, they were guilty by Complicity under R.C. 2923.03, which reads as follows.

> **(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:**
>
> **(1) Solicit or procure another to commit the offense;**
>
> **(2) Aid or abet another in committing the offense;**
>
> **(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;**
>
> **(4) Cause an innocent or irresponsible person to commit the offense.**

---

[3] The appellants' briefs mention the misdemeanor Assault conviction sparingly regarding sufficiency and weight of the evidence, perhaps because the sentence was run concurrently to the Felonious Assault conviction.

Evidence Presented by the State

{¶12} The State presented the direct testimony of the victim in this matter, Ervin.  He testified that on the night in question he took his dog outside just before 9 p.m. and he was approached by three men wearing similar outfits, like a uniform. "Ring" security camera footage from Ervin's doorbell was introduced into evidence showing Ervin outside and the three men walking in the neighborhood, dressed similarly.  Unfortunately all individuals are out of frame from the camera when the incident occurs and the camera shuts off prior to the incident, so there is no video footage of the altercation.

{¶13} Nevertheless, Ervin testified that one of the short-haired men, Martinez, approached Ervin and asked about his electric provider.  Ervin indicated that he did not think he had a choice of electric provider and the men went to leave. Prior to the "Ring" device shutting off, it recorded some audio that included the world "electric."  Following the interaction, Ervin turned back toward his house but was stopped when Martinez indicated he had one more question.  Ervin testified,

> **\* \* \* and so, I was ready to hear the question and he [short-haired individual identified at trial as Martinez] pulled a gun from the back of his pants and said, we need to get in the house.**
>
> **Um, I was stunned at the time and he took a couple more steps and said, we need to get in the house.  And I started to go to the house and I stopped and turned around.  I lost sight of him for a moment and then as I turned around I was hit in the face with a gun and I went down.  I was bleeding badly.  My nose was bleeding.  I had cuts.**

(July 16, 2019, Vol. II, Tr. at 49-50).

{¶14} Ervin testified that after he went to the ground, Martinez "yanked" him up and repeated that they needed to get into the house. Ervin testified that the longer haired individual, identified at trial as Mejia, had a gun out and was pointing at his chest from only a couple feet away. According to Ervin, Mejia had a latex glove over his hand. Ervin testified he grabbed Mejia's gun, that there was a brief struggle and he lost his balance and "went down, again," injuring his surgically-repaired knee. (Tr. at 50). He demonstrated in court how this struggle occurred. Ervin testified that as he was on the ground, Mejia had the gun pointed at his chest so Ervin started to yell for his wife to call 9-1-1, then he also began yelling for help. Ervin testified that after he began yelling the three men ran off and got into a red Nissan SUV. A woman in the neighborhood testified that she observed the red SUV parked in an area where no houses were present and she thought it was odd. Ervin's wife testified the vehicle was perhaps a quarter-mile away.

{¶15} Ervin's wife called 9-1-1 and police responded to the scene. A neighbor two houses down heard Ervin's yelling and came over to see what was happening. Five black zip ties and a roll of duct tape were left in the driveway. A significant amount of blood was found on Ervin's face and his arms. In addition, there were numerous blood droplets in the driveway. Ervin's injuries were listed as "minor" on the police reports; however, he had two small scars on his face from the

incident, he was diagnosed with PTSD, and the falls to the ground aggravated an old surgical injury in his knee that was still causing him problems at the time of trial.

{¶16} Law enforcement investigators used a nearby license plate reader that had been placed in the front yard of a homeowner to identify the license plate of the red Nissan SUV and then track it to its owner—Rebecca Vance, who was the mother of several of Martinez's children. The vehicle was located at Rebecca's house the next day and law enforcement approached the residence and knocked on the door. Martinez and Mejia were inside. Martinez and Rebecca permitted officers to search the residence and the red SUV.

{¶17} In the SUV, officers located white zip-ties and latex gloves. The zip-ties were the same size as the black zip ties from Ervin's driveway, but they were a different color. In the home, in the basement where Mejia was located, was a loaded handgun with blood on it. The blood was consistent with Ervin's DNA. Mejia's black pants and tan/khaki-colored shirt were located and the pants contained blood consistent with Ervin's DNA. Upstairs police located Martinez's black pants and tan/khaki-colored shirt. Inside a pants pocket, officers located a piece of paper with five handwritten addresses, including one in Ervin's neighborhood, but it was not his address specifically. Law enforcement testified that most of the homes listed on the paper were for sale or vacant. Officers also located a firearm in one of the

children's rooms; however, there were too many contributors of DNA to determine whose DNA was on the weapon, other than that one of the contributors was definitely a female.

{¶18} At trial, the State presented the testimony of Ervin, his wife, their neighbor who heard his yelling and came to the scene, another nearby homeowner who had seen the red Nissan SUV parked in an odd area, numerous law enforcement officers and a DNA analyst. The State also introduced into evidence, *inter alia*, photographs from the scene, photographs of Ervin's injuries, the "Ring" videos, the 9-1-1 call, the zip-ties collected at the scene, the firearms collected during the search of the home Mejia and Martinez were found in, and DNA test results.

{¶19} Both Mejia and Martinez had their own defense counsel, and through cross-examination of the State's witnesses the defense counsels suggested that Ervin may have instigated the matter by using racial slurs and that the third individual present at the scene actually committed the assault.[4] Ervin denied using racial slurs and he also testified that Mejia and Martinez were the only individuals involved, pulling guns on him, while the third individual stayed near the sidewalk.

Analysis

{¶20} Mejia and Martinez argue that the State did not present sufficient evidence that the appellants acted "in concert," that they aided or abetted each other,

---

[4] Defense counsels also raised questions regarding whether the Ring security footage could have been edited or tampered with, but this was denied.

or that they shared the mental culpability of "knowingly" required to commit a Felonious Assault, an Assault, or be complicit to a Felonious Assault and an Assault. They also argue that there was no evidence that Mejia had contact with Ervin. Further, they argue that being present at the scene of an offense is not enough to show that either defendant was knowingly complicit in any overt act.

**{¶21}** Contrary to the arguments made by Mejia and Martinez the State presented the testimony of the victim in this matter and he indicated that he was approached by multiple people and after a brief conversation two of the people pulled out guns. He testified that he was struck by one of the individuals with a gun, and that one of the individuals told him repeatedly that they needed to get into the house. Upon being struck with the gun, Ervin was injured and fell to the ground, bleeding from his face. Being struck with a gun wherein an injury resulted would constitute causing or attempting to cause harm by means of a deadly weapon, which is sufficient to establish Felonious Assault under R.C. 2903.11(A)(2). *See State v. Junod*, 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 25 (gun can be deadly weapon if used as a bludgeon); *State v. Houston*, 8th Dist. Cuyahoga No. 100655, 2014-Ohio-3911 (gun can be a deadly weapon when used as a bludgeon). Ervin was also separately knocked down to his knee, injuring it, when struggling with the gun, causing physical harm to satisfy an Assault.

{¶22} While it is true that Ervin's testimony is unclear as to who initially struck him with the gun because he had partially turned away from the appellants, Ervin's testimony was clear that the only two individuals who approached him were Mejia and Martinez. Ervin testified that the third individual stayed by the sidewalk. Ervin identified Mejia and Martinez at trial as the men who approached him and spoke to him. In addition, Ervin's blood was found on Mejia's pants and on a gun that was located near to where Mejia was sleeping in the basement. These facts all indicate that a gun did, in fact, strike Ervin and it is circumstantial evidence of Mejia having contact with Ervin.

{¶23} Notwithstanding this evidence of an assault with a deadly weapon, Mejia and Martinez argue that the State did not establish that they shared the criminal intent of "knowingly" in order to be convicted of complicity for aiding and abetting one another. A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 2001-Ohio-1336. "Such intent may be inferred from the circumstances surrounding the crime." *Id.* at 246.

{¶24} In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 460 N.E.2d 672 (8th Dist.1983). "The mere presence of an accused at the scene

of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025, 1027 (1982). Additionally, even if the accused has knowledge of the commission of the crime, his presence at the scene is not enough to convict him of aiding and abetting. *State v. Butcher*, 5th Dist. Stark No. 2016CA00207, 2017-Ohio-4154, ¶ 21, citing *State v. Cummings*, 10th Dist. Franklin No. 90AP-1144, unreported (Apr. 21, 1992), *citing United States v. Head*, 927 F.2d 1361, 1373 (C.A. 6, 1991); *State v. Woods*, 48 Ohio App.3d 1, 2, 548 N.E.2d 954 (1st Dist.1988).

{¶25} Here the appellants suggest that there was no testimony as to who committed the assaults and there is no indication that either or both individuals acted knowingly. However, the appellants approached the scene together wearing similar outfits and carrying concealed firearms. The victim indicated that both appellants pointed guns at him, that the victim was told the appellants needed to get inside the home, and that appellants left zip-ties and duct tape at the scene. It is undisputed that the victim was struck, and the victim testified he was hit with a gun. It would be reasonable based on this testimony for a jury to infer that the appellants were acting in concert, particularly since they approached together and ran off together once the victim started yelling. Further, the testimony of one witness, if believed, is sufficient to establish the elements of an offense. *State v. Thompson*, 10th Dist. Franklin No. 16AP-812, 2017-Ohio-8375, ¶ 5.

{¶26} While appellants make claims regarding sufficiency of the evidence in their brief, arguing that the State failed to present certain evidence, the arguments really are regarding weight of the evidence because they are essentially claiming that the State's testimony should not be believed and inferences should not be made from it. Appellants are also not denying that Ervin was struck, rather they are claiming that he was struck by the third individual. These are all issues for weight of the evidence. However, specifically addressing their sufficiency arguments, we find that sufficient evidence was presented to convict the appellants of Felonious Assault with a deadly weapon and misdemeanor Assault as charged. Therefore, their first assignments of error are overruled.

*Second Assignment of Error*

{¶27} In their second assignment of error, appellants argue that their convictions for Felonious Assault with a firearm specification and for misdemeanor Assault were against the manifest weight of the evidence. Specifically, they contend that Martinez's testimony established that the third individual at the scene actually struck Ervin after Ervin used a racial slur, and that Martinez tried to defuse the situation rather than engage in it.

Standard of Review

{¶28} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting

-16-

testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶29} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

{¶30} The defense presented testimony that Martinez operated a business that was registered to Melissa Solomon. Melissa was the mother of three of Martinez's children. The business, which was incorporated by Martinez, cleaned floors, cleaned out properties, and cleaned other businesses. In 2015 Martinez filed articles of incorporation with the State of Ohio. Solomon and Martinez testified that the business had a gross income of roughly $260,000 in 2017, though it was only

$148,000 in 2018, due in part, Solomon claimed, to the arrest of Martinez. Testimony indicated that Mejia operated a similar business in Colorado, and at the time of this incident he was visiting with Martinez for a few days.

**{¶31}** Martinez testified that on the date of the incident he was walking around neighborhoods with Mejia and a man named Joseph Genty looking to solicit business from individuals, contractors, or subcontractors. Genty was a new employee in his trial period so Martinez did not know him well. Martinez testified that the three had walked around numerous neighborhoods that day, and the neighborhood where the altercation occurred was the last one they were visiting that evening. Martinez testified that members of his company regularly walked around soliciting business in the evening because that was when people were home.

**{¶32}** Martinez testified that as they walked past Ervin's home, Ervin's dog ran up to them. Martinez testified that he asked Ervin about contractors or subcontractors in the area to search for potential customers and that Ervin then responded that there was no work for "niggers here, get out of my neighborhood." (July 18, 2019, Tr. at 238). Martinez testified that they started walking away but Joseph ran up to Ervin screaming, asking what Ervin had said. Martinez testified that he believed Joseph had struck Ervin as well, but he did not personally see it.

**{¶33}** Martinez testified that he then got between Ervin and Joseph and told Ervin to go inside and that he would handle the situation. Martinez testified that

Ervin screamed for his wife to call 9-1-1 and to get his firearm, so Mejia drew his firearm in response.  Martinez testified that the three businessmen left but Ervin went inside and came back out with a firearm yelling racial slurs at them as they ran to their vehicle.

**{¶34}** Martinez acknowledged that Joseph should not have struck Ervin regardless of what he said, but he testified that Joseph was acting on his own.  He testified that good employees were hard to find in the janitorial business and that turnover happened often, so he did not know Joseph well and he did not condone Joseph's actions.

**{¶35}** Martinez and Solomon testified that they used zip-ties and duct tape to repair things while they were cleaning.  They testified that they carried them regularly.  They also testified that they wore latex gloves because people often did not like them touching their things directly or because people were scared of germs.  As to the firearms, Martinez testified that he did not have one on him at the time of the altercation and that they only occasionally carried firearms because they sometimes went through tough neighborhoods to solicit business.  Finally, Martinez emphasized that the paper with addresses found in his clothing pocket during the search contained addresses of homes that were all vacant and for sale because he was looking for contractors or subcontractors dealing with the homes that might need a cleaning company.

Analysis

**{¶36}** Appellants suggest that a review of the entire record "shows that the convictions for assault, felonious assault, and firearm specifications were against the manifest weight of the evidence." They suggest that "Joseph Genty" was responsible for spontaneously hitting Ervin and that the appellants did not act in complicity with him. Further, appellants suggest that the jury clearly did not believe the State's theory of the case that this was an attempted home invasion because the jury did not convict the appellants of Attempted Kidnapping, Abduction, or Possession of Criminal Tools.

**{¶37}** Contrary to their arguments, the evidence provided by the defense did nothing to disprove that an Assault or a Felonious Assault occurred and that they were perpetrated against Ervin. Appellants just seem to suggest that it was perpetrated solely by the third party, "Joseph Genty," and that there was no collaboration between them.

**{¶38}** However, appellants' version of events ignores some key pieces of evidence, such as the gun that was located in Rebecca Vance's home near Mejia's things that had Ervin's blood on it. In addition, Ervin's blood was found on Mejia's pants. Further, appellants' explanations for the zip-ties and duct tape were questionable given that they stated they needed them to repair equipment that they were not even carrying around or using at the time.

{¶39} Notwithstanding these points, the jury was presented with Ervin's testimony about the matter in question. Ervin testified that appellants approached him and asked about his electric. Something can be overheard on the ring camera regarding electric, which Martinez even admits, at least corroborating that portion of Ervin's story. Ervin's story of the appellants' approach would be contrary to the story told by Martinez in his testimony.

{¶40} Furthermore, the jury was able to see and hear the testimony of Ervin and Martinez and to evaluate their credibility. The jury found that Ervin's testimony was credible regarding the Assault, the Felonious Assault, and the firearm specification and we will not second-guess these credibility determinations. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶41} Finally, while appellants contend that the jury must not have accepted the State's version of the case, or the testimony of Ervin completely, as they did not convict the appellants of several indicted crimes, all the verdicts establish is that the jury determined the elements of the crimes wherein appellants were acquitted were not satisfied beyond a reasonable doubt. We will not speculate as to why a jury convicted on some crimes and acquitted on others or speculate that because some crimes resulted in an acquittal but not others the outcome amounted to a rejection of any specific theory of the case.

{¶42} After reviewing the record in its entirety we cannot find that the jury clearly lost its way or created a manifest miscarriage of justice in this matter in convicting appellants of Assault and Felonious Assault with an accompanying firearm specification. Therefore appellants' second assignments of error are overruled.

*Third Assignments of Error*

{¶43} In their third assignments of error, appellants contend that their convictions for Felonious Assault violated double jeopardy because they were the same Felonious Assault offenses that the jury acquitted the appellants of when the jury found appellants guilty of the lesser-included offenses of Assault in Count 1 of the indictment. Appellants suggest that this leads to inconsistent verdicts in this matter.

Relevant Authority

{¶44} " 'Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.' " *State v. Smith,* 3d Dist. Seneca No. 13–10–24, 2011–Ohio–997, quoting *State v. Trewartha,* 10th Dist. Franklin No. No. 04AP–963, 2005–Ohio–5697, ¶ 15, citing *State v. Adams,* 53 Ohio St .2d 223 (1978), vacated in part on other grounds in *Adams v. Ohio,* 439 U.S. 811, 99 S.Ct. 69 (1978).

Every count of a multiple-count indictment is considered to be distinct and independent of all the other counts; therefore, inconsistent verdicts on *different* counts do not justify overturning a verdict of guilt. (Emphasis Added.) *Id.,* citing *State v. Hicks,* 43 Ohio St.3d 72, 78 (1989); *State v. Brown,* 12 Ohio St.3d 147 (1984), syllabus; *State v. Washington,* 126 Ohio App.3d 264, 276 (2nd Dist.1998). As the Ohio Supreme Court has stated, "the sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." *State v. Lovejoy,* 79 Ohio St.3d 440, 444 (1997); *State v. Seitz,* 3d Dist. Shelby No. 17-12-11, 2014-Ohio-2463, ¶ 22.

Analysis

**{¶45}** In their third assignment of error, appellants attempt to confuse the issues, and perhaps this Court, by suggesting that the jury both acquitted and convicted the appellants on the *same* Felonious Assault. A facial reading of the charges and convictions shows that this is categorically false, as the first Felonious Assault charge was related to serious physical harm done to Ervin and the second Felonious Assault was related to causing physical harm by means of a deadly weapon. The two charges related to two separate incidents that occurred during the altercation at Ervin's residence on the evening in question. However, even if they were related to the same incident there certainly could be charges in the alternative wherein the jury found that no serious physical harm was done here but the physical

-23-

harm was inflicted via a deadly weapon. Thus there is no inconsistency in the verdicts here on the different counts regarding Felonious Assault. *See State v. Smith,* 3d Dist. Seneca No. 13–10–24, 2011–Ohio–997. Therefore appellants' third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶46}** In appellants' fourth assignment of error they argue that their convictions for misdemeanor Assault and their convictions for Felonious Assault were for the same offense, therefore the trial court erred by sentencing the appellants on both the Assault and the Felonious Assault, even though the sentences were run concurrently.

Standard of Review

**{¶47}** " 'Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo.' " *State v. Jessen*, 3d Dist. Auglaize No. 2-18-16, 2019-Ohio-907, ¶ 22, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-955.

Relevant Authority

**{¶48}** Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B)  Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶49} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme Court of Ohio held the following with regard to determining allied offenses:

**1.   In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**

**2.   Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

**3.     Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

**At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of**

-25-

**dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff,* 2015-Ohio-995 at ¶ 26.

Analysis

**{¶50}** Appellants argue that the Assault and Felonious Assault convictions should have merged in this matter. Strangely, appellants contend that we should merge their convictions and then the felony conviction for Felonious Assault should be vacated. However, even if we found that merger applied in this instance the proper remedy would be to remand the matter to the trial court so that the State could elect whether it wanted to proceed to sentencing on the Felonious Assault with the firearm specification or the misdemeanor Assault. *State v. Cruz-Altunar*, 10th Dist. Franklin No. 18AP-951, 2019-Ohio-2298, ¶ 23, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2. The proper remedy would not be to simply vacate the more serious conviction.

**{¶51}** Notwithstanding the appellants' clear misunderstanding of the application of allied offenses in this matter, we cannot find that the trial court erred by imposing separate, albeit concurrent, sentences for Assault and Felonious Assault with a firearm specification because the State alleged that multiple assaults occurred against the victim—they were just close in time to each other.

{¶52} The State alleged, and Ervin testified, that Ervin was struck in the face with a gun (Felonious Assault with a deadly weapon), and that he was separately knocked to the ground, injuring his knee during the struggle for Mejia's gun. These two separate assaults could lead to two separate convictions and sentences. Thus we do not find that the trial court erred or that double jeopardy was implicated in this matter. Therefore, appellants' fourth assignment of error is overruled.

*Conclusion*

{¶53} For the foregoing reasons the appellants' assignments of error are overruled and the judgments of the Union County Common Pleas Court are affirmed.

***Judgments Affirmed***

**PRESTON and ZIMMERMAN, J.J., concur.**

**/jlr**