[Cite as *State v. Denoyer*, 2021-Ohio-886.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  1-20-34

    v.

ANTHONY J. DENOYER,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0435

Judgment Affirmed

Date of Decision:   March 22, 2021

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Anthony Denoyer ("Denoyer"), brings this appeal from the August 11, 2020 judgment of the Allen County Common Pleas Court sentencing him to an aggregate indefinite prison term of a minimum of 32 years to a maximum of 36 years. On appeal, Denoyer argues that 3 of the 4 felonious assault charges to which he pled guilty should have merged for the purposes of sentencing, that the record did not support maximum prison terms on each of the felonious assault convictions, and that the record did not support consecutive sentences.

*Background*

{¶2} Denoyer is the father of G.M., who was born in August of 2019. On October 29, 2019, police were contacted by St. Rita's Medical Center with regard to G.M. having multiple skull fractures, a brain bleed, several fractured ribs, and a fractured femur. The injuries were life-threatening. An investigation established that G.M. was in Denoyer's care when she was injured, and Denoyer later made admissions that he caused the injuries.

{¶3} On December 12, 2019, Denoyer was indicted on four counts of felonious assault in violation of R.C. 2903.11(A)(1), all felonies of the second degree, and four counts of endangering children in violation of R.C. 2919.22(B)(1), all felonies of the second degree. Two of the felonious assault counts in the indictment, specifically counts 1 and 3, carried specifications pursuant to R.C.

2941.1426 alleging that the felonious assaults perpetrated by Denoyer against G.M. resulted in "permanent disabling harm," and that G.M. was less than ten years old. G.M. was, in fact, less than three months old.[1] Denoyer originally pled not guilty to the charges.

{¶4} On June 22, 2020, Denoyer entered into a written negotiated plea agreement wherein he agreed to plead guilty to the four counts of felonious assault in the indictment. In exchange, the State agreed to dismiss the four endangering children charges, the two "permanent disabling harm" specifications attached to two of the felonious assault counts, and a separate pending criminal case against Denoyer that alleged Denoyer had committed, *inter alia*, grand theft of a motor vehicle.[2]

{¶5} A change-of-plea hearing was held wherein the plea agreement was recited to the trial court. At the time that the State recited the agreement to the trial court, the State emphasized that it would be arguing at sentencing, specifically contending that the felonious assault counts would not merge due to the disparate injuries to various parts of the infant's body, due to some of the injuries being in different stages of healing, and due to Denoyer's admission to five to seven acts of

---

[1] Six of the eight counts—three felonious assaults and three endangering children—alleged that the incidents occurred on or about October 28, 2019. The remaining two counts—one felonious assault and one endangering children—alleged that the incidents occurred on or about October 22, 2019, through October 28, 2019.

[2] The record from the separate trial court case that was dismissed pursuant to the plea agreement is not before us, thus we take this information from the written plea agreement and from statements made at the plea hearing.

violence against the child. After the plea agreement was recited, the trial court conducted a Crim.R. 11 hearing wherein Denoyer knowingly, intelligently, and voluntarily waived his rights and entered his pleas pursuant to the agreement. Sentencing was set for a later date.

{¶6} Prior to the sentencing hearing the State filed a brief outlining its argument that the felonious assault counts should not merge. First, the State noted that Denoyer had given two interviews in this matter. During the first interview, when Denoyer was confronted with G.M.'s injuries, Denoyer claimed that he had "blackouts" and was told by others that he got violent during those episodes. He also claimed that he tripped with G.M. once and she hit her head on a table. Further, he stated that a month prior he picked G.M. up too hard and broke her rib, hearing it pop. In addition, he admitted to striking G.M. in the head on purpose, describing five episodes where he struck her to keep her awake.

{¶7} In a second interview, Denoyer admitted to repeatedly abusing G.M. since her birth. He admitted to beating or assaulting G.M. five to seven times with the most recent being on October 28, 2019. He admitted to punching her, shaking her, and squeezing her so hard that he heard ribs pop. He also admitted to picking up G.M. by the leg when she was "fussing" causing the femur to fracture. Further, he admitted to punching G.M.'s head hard enough to make her head "soft." (Doc. 89).

{¶8} The State's sentencing brief then detailed the medical evidence related

to G.M. that would have been presented at trial as follows.

> **Upon examination of GM, Dr. Jennifer T[.] of Nationwide
> Children's Hospital in Columbus described various rib fractures
> as acute (within seven days [of] presentation), and non acute or
> healing. Two of eighteen rib fractures were acute and occurred
> within the seven day period of the 10-29-19 admission. The
> sixteen older rib fractures (symptomatic) cannot be more
> specifically dated but would have occurred in the ten week period
> from the date of birth (8-5-19) to seven days before the date of
> admission on 10-29-19, or 10-22-19. The older fractures were
> variously callused and in stages of healing, as evidenced on a CT
> scan.**

> **A chest CT scan was completed, and a reconstruction image
> was also completed. Nationwide doctors would opine that the
> fractures were consistent with the abdominal squeezing related to
> them, as admitted by the Defendant. The imaging is available
> through Children's Health Information Management and can be
> enhanced to pinpoint fractures by radiologist Dr. Cody Y[.]**

> **Dr. T[.] noted two types of cranial injuries. One of the
> injuries was shearing, caused by shaking or violent
> acceleration/deceleration. (Note-Defendant has admitted shaking
> victim on multiple occasions). The other multiple skull injuries
> described in the records are due to external trauma, as traumatic
> force applied to the outside of GM's skull. This differentiation
> leads to the conclusion of two or more separate types of acts
> individually inflicting injury to GM's skull.**

> **The femur injury is located near a growth plate, in a location
> Dr. T[.] attributes to 'aggressive' infliction of trauma unique to
> abuse of a child under one year of age and having occurred within
> seven days of observation. This resulted from pulling and
> twisting.**

> **One of [the] CT images of GM's skull shows extensive
> fracturing. Another shows herniation (expulsion) of some brain**

**tissue through the fracture site. Neuro-radiologist Jerome R[.] would at trial present enhanced imagery of the injuries, interpreting and articulating various CT views. Dr. T[.] agrees that the injuries were life threatening, and that GM's breathing was destabilized.**

(Doc. No. 89).

{¶9} On August 10, 2020, a sentencing hearing was held. The State and defense counsel presented arguments related to merger. The trial court then indicated it had read the briefs on the matter and the pre-sentence investigation. Ultimately the trial court determined that the felonious assault counts did not merge for the purposes of sentencing. The trial court then sentenced Denoyer to maximum consecutive prison terms for an aggregate prison term of 32-36 years. A judgment entry memorializing Denoyer's sentence was filed August 11, 2020. It is from this judgment that Denoyer appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court [violated] the Double Jeopardy clauses of the federal and state constitutions by failing to merge the first three counts of felonious assault under R.C. 2941.25.**

**Assignment of Error No. 2**
**By clear and convincing evidence the record does not support the imposition of maximum prison terms.**

**Assignment of Error No. 3**
**By clear and convincing evidence the record does not support consecutive sentences.**

*First Assignment of Error*

**{¶10}** In his first assignment of error, Denoyer argues that the trial court erred by failing to merge three of his felonious assault convictions for purposes of sentencing. More specifically, he contends that the indictment alleged that three of the felonious assaults occurred "on or about October 28, 2019" and thus they were part of the same course of conduct.

Standard of Review

**{¶11}** " 'Whether offenses are allied offenses of similar import is a question of law that this Court reviews de novo.' " *State v. Jessen*, 3d Dist. Auglaize No. 2-18-16, 2019-Ohio-907, ¶ 22, quoting *State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894; *see generally State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-955.

Relevant Authority

**{¶12}** Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

**{¶13}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, the Supreme

Court of Ohio held the following with regard to determining allied offenses:

> **1.     In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.**
>
> **2.     Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**
>
> **3.     Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.**

The Supreme Court in *Ruff* explained:

> **At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.**

*Ruff*, 2015-Ohio-995 at ¶ 26.

Analysis

**{¶14}** In this case, Denoyer argues that three of his convictions for felonious assault should have merged for the purposes of sentencing. For reference, Denoyer's felonious assault convictions were in violation of R.C. 2903.11(A)(1), which reads, "No person shall knowingly * * * Cause serious physical harm to another or to another's unborn[.]"

**{¶15}** On appeal, Denoyer argues that there was no evidence that the felonious assaults against G.M. were committed separately. To support his claim, he cites the fact that the indictment for three of the felonious assault charges alleged the "same conduct against the same victim on the same date of October 28, 2019." (Appt.'s Br. at 7). Denoyer argues that the prosecution did not present evidence indicating that separate acts occurred on the given "date" at the plea hearing or at the sentencing hearing, thus the trial court erred by failing to merge the three felonious assault convictions related to the acts "on" October 28, 2019.

**{¶16}** At the outset, we note that the indictment alleged that three of the felonious assault charges to which Denoyer pled guilty occurred *on or about October 28, 2019*. The prosecution later explained that given G.M.'s extremely young age, it was difficult to discern exactly when some of the injuries occurred.

**{¶17}** Nevertheless, contrary to Denoyer's argument, the prosecution presented multiple sentencing briefs detailing the disparate injuries to G.M., and

their origin according to medical evidence. The prosecution's sentencing brief specifically separated the four felonious assaults into four different injury categories. The first felonious assault was related to "numerous blows to the head of GM by the Defendant on 10-28-19, resulting in multiple skull fractures." (Doc. No. 88). The second felonious assault arose "from a shearing injury from shaking, or violent acceleration or deceleration to GM by the Defendant on or about 10-28-19." (*Id.*) The third felonious assault was related to a femur injury and two broken ribs inflicted by Denoyer during the period of October 22, 2019 to October 28, 2019. Finally, the fourth felonious assault was related to G.M. having sixteen broken ribs.

{¶18} At the sentencing hearing, the prosecution reiterated the points from its written sentencing memoranda, adding that Denoyer had acknowledged at least five to seven different violent acts against the infant. Further, the prosecution emphasized that the distinct injuries were caused by separate acts that would have been identified through the medical testimony such as striking, squeezing, shaking, etc.

{¶19} In *State v. Ruff, supra*, at ¶ 26, the Supreme Court of Ohio defined what "constitutes two or more offenses against a single victim," by stating that there can be multiple convictions "if the harm that results from each offense is separate and identifiable from the harm of the other offense." Here the record reflects

separate identifiable harm to G.M. coming from separate identifiable acts of Denoyer, i.e. striking, shaking, squeezing.

{¶20} Moreover, even if some of these acts did occur on the same day, that does not make them allied as each act was distinct. Further, they were perpetrated against an infant less than three months old, so the knowing potential of serious physical harm would be in each identifiable act of striking, shaking, and squeezing. As we have held previously, separate assaults, even in close temporal proximity, can lead to separate convictions. *See State v. Mejia*, 3d Dist. Union No. 14-19-28, 2020-Ohio-4883, ¶ 50-52.

{¶21} Based on the record before us we cannot find that the trial court erred by finding that the felonious assault convictions did not merge for purposes of sentencing. Therefore, Denoyer's first assignment of error is overruled.

*Second Assignment of Error*

{¶22} In his second assignment of error, Denoyer argues that the record does not support the imposition of maximum 8-year prison terms for each of his felonious assault convictions.

Standard of Review

{¶23} Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is

otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Relevant Authority

{¶24} " 'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than [a] minimum sentence[ ].' " *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, ¶ 26, quoting *State v. King*, 2d Dist. Clark No. 2012-CA-25, 2013-Ohio-2021, ¶ 45; *State v. White*, 3d Dist. Marion No. 9-19-32, 2020-Ohio-717, ¶ 8. Nevertheless, when exercising its sentencing discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Kerns*, 3d Dist. Logan No. 8-18-05, 2018-Ohio-3838, ¶ 8, citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 38.

{¶25} Revised Code 2929.11 provides that sentences for a felony shall be guided by the overriding purposes of felony sentencing: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court

determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).  In order to comply with those purposes and principles, R.C. 2929.12 instructs a trial court to consider various factors set forth in the statute relating to the seriousness of the offender's conduct and to the likelihood of the offender's recidivism. R.C. 2929.12(A)-(E).

Analysis

{¶26} In this case, Denoyer was convicted of four counts of felonious assault in violation of R.C. 2903.11(A)(1), all second degree felonies.  Pursuant to R.C. 2929.14(A)(2)(a), the prison term for a second degree felony "shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code[.]"   Under R.C. 2929.144(B)(1), the maximum prison term for a qualifying felony of the second degree shall be equal to the "minimum term imposed * * * plus fifty per cent of that term."  Here, Denoyer was sentenced to serve four maximum, indefinite prison terms with a stated minimum of 8 years.  The maximum was stated to be 12 years, though that only applies to one of the four counts.  These prison terms are within the appropriate statutory range and they are compliant with the relevant statutes; therefore the maximum prison terms are presumptively valid.  *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31.

{¶27} Moreover, at the sentencing hearing, the trial court referenced the requisite sentencing statutes, specifically indicating that it had balanced the seriousness and recidivism factors under R.C. 2929.12. The trial court's findings were incorporated into its judgment entry, further indicating it had considered R.C. 2929.11 and 2929.12. Importantly, "[a] trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes." *Maggette*, 2016-Ohio-5554, at ¶ 32, citing *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18. Thus not only was the sentence in this case presumptively valid, the trial court also indicated that it considered the appropriate statutes. Under these circumstances, we cannot find that Denoyer demonstrated that his sentence was clearly and convincingly contrary to law.

{¶28} Furthermore, to the extent that Denoyer seeks to have this Court modify his sentence, we emphasize that the Supreme Court of Ohio recently clarified an appellate court's review a felony sentence under R.C. 2953.08(G)(2). *State v. Jones*, --- Ohio St.3d ---, 2020-Ohio-6729, ¶ 39.[3] The Supreme Court of Ohio determined that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an

---

[3] Because *Jones* was decided after the parties submitted their appellate briefs in this case, neither party has had the opportunity to address its applicability. However, *Jones* "does not change the law" but instead "clarifies existing law and precedents." *State v. Roberts*, 5th Dist. Richland No. 2020 CA 0035, 2021-Ohio-90, ¶ 81, fn. 2. Therefore, we elect to apply *Jones* to the instant case without the benefit of supplemental briefing.

appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and R.C. 2929.12 because * * * R.C. 2929.11 and R.C. 2929.12 are not among the statutes listed in the provision." *Id.* at ¶ 31. Thus, the Supreme Court of Ohio concluded that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's "findings" under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

{¶29} In *Jones*, the Supreme Court of Ohio also confirmed that R.C. 2953.08(G)(2)(b) does not provide a mechanism for an appellate court to modify or vacate a felony sentence based upon a finding that the sentence is "contrary to law" because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 32-39. "As a result of the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when

it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *Id*. citing *State v. Brown*, 2d Dist. No. 2016-CA-53, 2017-Ohio-8416, ¶ 74; *see State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 65.

**{¶30}** In sum, the record demonstrates that the prison terms imposed by the trial court in this case are within the statutory range and that the trial court considered the requisite statutory factors in R.C. 2929.11 and 2929.12 when it fashioned Denoyer's aggregate sentence. Thus, Denoyer cannot demonstrate that his sentence is clearly and convincingly contrary to law, and his sentence must therefore be affirmed. *See State v. Burks*, 2d Dist. Clark No. 2019-CA-70, 2021-Ohio-224, ¶ 9, ("Under *Jones*, this ends the inquiry regarding the individual sentences. Thus, there is no basis upon which to modify or vacate either individual sentence."); *see also*, *D-Bey, supra*, ¶ 75, citing *Jones* at ¶ 39 (concluding that "this court cannot review D-Bey's sentences to determine whether they are "excessive" or otherwise not "supported by the record under R.C. 2929.11 and 2929.12."). For all of these reasons, Denoyer's second assignment of error is overruled.

*Third Assignment of Error*

**{¶31}** In his third assignment of error, Denoyer argues that the record does not support consecutive sentences in this matter.[4]

Relevant Authority

**{¶32}** Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, a trial court must find on the record that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Accord State v. Grate*, --- Ohio St.3d ---, 2020-Ohio-5584, ¶ 205. A trial court must then also find that at least one or more of the aggravating factors in R.C. 2929.14(C)(4)(a) through (c) are present.

**{¶33}** In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 37, the Supreme Court of Ohio held that a trial court must make the requisite statutory findings before imposing consecutive sentences "at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings."

---

[4] The same standard of review from the second assignment of error applies here.

Analysis

**{¶34}** In this case the trial court made all of the appropriate consecutive sentences findings at the sentencing hearing, and in its judgment entry. This was sufficient to comply with R.C. 2929.14(C)(4), and with the Supreme Court of Ohio's interpretation in *Bonnell*.

**{¶35}** On appeal, Denoyer does not even attempt to argue that the trial court failed to make any of the appropriate findings; rather, he contends that the trial court's consecutive sentence findings were unsupported by the record. Importantly, and contrary to Denoyer's argument, a trial court has *no obligation to state reasons to support its findings*. *Bonnell* at ¶ 37. For this reason alone we could overrule Denoyer's assignment of error.

**{¶36}** Nevertheless, the trial court did state some reasons on the record as to why it was imposing consecutive sentences, indicating that this violence went on over a period of time, and that G.B. suffered serious physical harm, the extent of which may not even be determined for years to come. The trial court also cited that multiple acts occurred here, leading to separate identifiable harm. The litany of fractures and injuries to this child, less than three months old, cannot be overstated. While Denoyer may be remorseful now, and he may wish to have mental health treatment, that does not change his actions in this matter.[5]

---

[5] Denoyer claimed that he committed the acts while using "crystal meth."

**{¶37}** Based on the record before us we cannot find that Denoyer has demonstrated that his consecutive sentences were clearly and convincingly contrary to law. Therefore, his third assignment of error is overruled.

*Conclusion*

**{¶38}** For the foregoing reasons Denoyer's assignments of error are overruled and the judgment of the Allen County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**