[Cite as *State v. Maggette*, 2016-Ohio-5554.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 13-16-06

    v.

DEANDRE T. MAGGETTE,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 15-CR-0236

**Judgment Affirmed**

Date of Decision:   August 29, 2016

APPEARANCES:

    *James W. Fruth* **for Appellant**

    *Angela M. Boes* **for Appellee**

**SHAW, P.J.**

{¶1} Defendant-appellant, Deandre T. Maggette ("Maggette"), appeals the February 10, 2016 judgment entry of sentence journalizing his conviction by a jury for one count of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A),(B)(3), a felony of the third degree, and one count of sexual imposition, in violation of R.C. 2907.06(A)(4),(C), a misdemeanor of the third degree. The trial court sentenced Maggette to the maximum penalty of sixty months in prison for his conviction of unlawful sexual conduct with a minor and ordered him to comply with the registration requirements for a Tier II sex offender. As for his conviction of sexual imposition, the trial court imposed a sixty-day jail term to be served concurrent to the sixty-month prison term and ordered Maggette to comply with the registration requirements for a Tier I sex offender. On appeal, Maggette contends his convictions were based upon insufficient evidence and challenges the appropriateness of his sentence.

*Statement of the Case*

{¶2} On November 10, 2015, the Seneca County Grand Jury indicted Maggette on Count One, unlawful sexual conduct with a minor. This charge stemmed from allegations that over the course of several months Maggette engaged in sexual conduct with M.F., the half-sister of his then seventeen-year-old girlfriend, B.G. Maggette was renting a room at the home of M.F.'s parents, B.G.'s father and

step-mother. M.F. was thirteen years-old and Maggette was thirty-six-years old when the alleged sexual conduct began. The indictment also alleged Count Two, sexual imposition, which arose from a claim that, contemporaneous to the beginning of his sexual conduct with M.F., Maggette had put his hand down the pants of B.G.'s other half-sister, C.C., and placed his hand on her bare buttock. C.C. was fourteen-years-old at the time of the incident. Maggette was subsequently arraigned and pleaded not guilty to the charges.

{¶3} On February 1, 2016, the case proceeded to a jury trial. Several witnesses testified for the prosecution, including both victims, M.F. and C.C., the SANE nurse who examined M.F., administered a sexual assault kit, and collected M.F.'s DNA standard, and the scientists from BCI who tested M.F.'s vaginal swabs collected during the SANE exam and concluded Maggette's DNA could not be excluded from the sample. After the presentation of the prosecution's witnesses both the State and the defense rested. The jury returned a guilty verdict on both counts.

{¶4} On February 9, 2016, Maggette appeared for sentencing. The trial court sentenced Maggette to a sixty-month prison term on Count One, unlawful sexual conduct with a minor, and a sixty-day jail term on Count Two, sexual imposition, with the terms of incarceration to run concurrent. Based upon the convictions, Maggette was also classified as a Tier I and a Tier II sexual offender.

{¶5} Maggette filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE VERDICT THAT APPELLANT COMMITTED THE OFFENSES OF UNLAWFUL SEXUAL CONDUCT WITH A MINOR AND SEXUAL IMPOSITION.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT'S [SIC] ERRED AND ABUSED IT'S [SIC] DISCRETION IN IMPOSING UPON APPELLANT A MAXIMUM SENTENCE BECAUSE THE COURT DID NOT COMPLY WITH THE MANDATORY REQUIREMENTS OF CRIM.R. 32(A).**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO THE MAXIMUM TERM FOR INCARCERATION FOR SEXUAL IMPOSITION BECAUSE APPELLANT DID NOT COMMIT THE WORST FORM OF THE OFFENSE.**

*First Assignment of Error*

{¶6} In his first assignment of error, Maggette argues that there was insufficient evidence presented to convict him of unlawful sexual conduct with a minor and sexual imposition. Specifically, Maggette argues with regard to the unlawful sexual conduct with a minor offense that "[o]ther than the testimony of the 14 year old, [M.F.], there was no other direct evidence to demonstrate how semen from Appellant Maggette appeared in the SANE nurse's examination kit." (Appt. Brief at 10). As for the sexual imposition offense, he argues that "there was no

direct or testimonial evidence that either [C.C.] or Appellant Maggette were sexually gratified in any manner by the conduct alleged at trial." (Id. at 9).

*Standard of Review*

**{¶7}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

*Unlawful Sexual Conduct with a Minor*

**{¶8}** In Count One, Maggette was charged with unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), (B)(3) which states:

> **(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.**
>
> **\* \* \***
>
> **(B)(3) \* \* \* if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.**

{¶9} The State presented the following evidence in its case-in-chief to establish the essential elements of the crime. Cristen F., M.F.'s mother, testified that Maggette had been living in her home in Tiffin since April of 2015. She explained that at the time Maggette was the boyfriend of her seventeen-year-old step-daughter, B.G., who stayed in the home on the weekends. Per their arrangement, Maggette rented B.G.'s room at the home for $150.00 per month. Cristen claimed that she had known Maggette for over a year as B.G.'s boyfriend and initially thought he was twenty-two years old. She later learned that he was in fact in his mid-thirties.

{¶10} On October 31, 2015, at approximately 7:00 p.m., Cristen walked passed Maggette's room and observed him sitting on his bed "passionately kissing" M.F., her fourteen-year-old daughter. (Tr. at 134). Cristen confronted Maggette who initially denied engaging in any sexual conduct with M.F. However, M.F. led her mother into the bathroom away from Maggette, who at the time was attempting to fight his way into the bathroom and became involved in a "shoving match" with Cristen. (Id. at 136). Cristen and her husband were able to keep Maggette at bay and close the bathroom door. M.F. then revealed to her mother that Maggette had been having sexual intercourse with her in the home for several months.

{¶11} After M.F.'s disclosure, Maggette admitted to Cristen that he had been engaging in sexual conduct with M.F and asked Cristen if M.F. could begin sleeping

in his bed. Maggette explained to her that he wanted to continue his sexual relationship with M.F. and was no longer interested in dating B.G. (Trans. at 137). Cristen testified that once she obtained an admission from Maggette, she called the Tiffin Police Department. Law enforcement arrived at the home and questioned Maggette and members of the household. Cristen and M.F. were taken to the Toledo Hospital where M.F. was examined by a SANE nurse and a sexual assault kit was completed.

{¶12} M.F. also provided testimony for the prosecution. M.F. recalled Maggette moving into the home in April of 2015 and stated that the sexual conduct began about a month later. She testified that she was thirteen-years-old at the time. She explained that Maggette knew her age because he was aware that she attended middle school and occasionally woke her up for school. He also was present at her birthday party in September where she had a cake with number "14" on it.

{¶13} M.F. described Maggette initiating the physical relationship which involved daily instances of sexual intercourse, including vaginal intercourse, oral sex, and anal sex. M.F. claimed in the beginning she told Maggette to "stop," but he did not listen to her so she just "let it go." (Trans. at 226). She testified that Maggette had sex with her once or twice a day. She explained that the sex occurred mostly at night when the other members of the household were asleep and took place in her room, in Maggette's room, in the bathroom, and on the back porch. M.F.

stated that in the beginning of the relationship Maggette used a condom, but ceased to do so because he wanted to get her pregnant. (Trans. at 170). She recalled him ejaculating inside her on almost every occasion while engaging the three different types of intercourse. Even when Maggette moved out of the home for a brief period of time, he snuck back to the house at night to continue to have sex with M.F.

{¶14} M.F. recalled Maggette confronting her on October 31, 2015, after she disclosed their sexual relationship to her mother and her mother went downstairs to discuss the matter with her father. According to M.F., she and Maggette were upstairs in his room. Maggette locked the door and asked M.F. to repeat what she had said to her mother. Maggette became angry upon learning of M.F.'s disclosure and attempted to have sex with her again. M.F. managed to push Maggette to the floor and left the room.

{¶15} M.F. explained that she and Maggette last had sex in the bathroom on the sink the night before her parents discovered their relationship. She recalled that Maggette did not wear a condom and that he ejaculated inside her vagina. Afterwards, M.F. put on a pair of pants without underwear, which she claimed were stained with Maggette's semen. When law enforcement arrived the next day to investigate the allegations, M.F. showed them the pants with a visible white stain in the crotch area. She also informed law enforcement that she had not bathed since she and Maggette last had sexual intercourse on the bathroom sink the night before.

{¶16} The prosecution also presented the testimony of multiple law enforcement officers to relay the evidence collected during interviews with witnesses and from the investigation at the scene—i.e., the execution of search warrants which allowed law enforcement to obtain a DNA standard from Maggette, to take photographs of the places in the home where the sexual conduct was alleged to have occurred, and to gather clothing and other items which may contain DNA from M.F. and Maggette. As part of the investigation, M.F. was also the subject of an exam performed by a sexual assault nurse examiner or "SANE." During the exam, the SANE obtained M.F.'s account of the last sexual encounter on the bathroom sink and an overview of the sexual relationship between Maggette and M.F. Other than observing a suction injury or "hickey" on M.F.'s breast, the SANE did not note any other significant injury on M.F.'s body. However, the SANE testified that M.F.'s account of her sexual relationship with Maggette "was consistent with the exam [she] performed." (Trans. at 329-30).

{¶17} The SANE also completed a sexual assault kit, which involved the collection of vaginal swabs from M.F. The vaginal swabs were transported to the Bureau of Criminal Investigation or "BCI" for forensic testing. The prosecution called the two forensic scientists from BCI who handled the testing of the vaginal swabs to establish the chain of custody and the procedures used to identify the DNA found on the swabs. The scientists also obtained from law enforcement a DNA

standard from M.F. and Maggette for comparison purposes. According to the testimony, sperm was identified on the vaginal swab obtained from M.F. during the SANE examination. It was explained at trial that semen can persist in the vagina anywhere from 72 to 96 hours. (Trans. at 344).

{¶18} The semen found on the vaginal swab was compared to the DNA standard obtained from Maggette. The DNA analyst testified that "[t]he DNA profile obtained from the vaginal samples was a mixture. [M.F.] was included in that mixture, so she cannot be excluded as one of the contributors. And Deandre Maggette is also included in that mixture of DNA profiles." (Trans. at 361).[1]

{¶19} On appeal, Maggette claims the trial court erred in overruling his Crim.R. 29 motion for acquittal on the basis that there was insufficient evidence to demonstrate that his semen found on M.F.'s vaginal sample was the result of him engaging in sexual intercourse with her. In other words, Maggette suggests that his semen was extracted from another source and purposely placed in M.F.'s vagina to give the appearance that he had sex with her. This is consistent with the line of questioning utilized by Maggette's defense counsel during cross-examination of the medical and scientific witnesses at trial alluding to the possibility of a turkey baster

---

[1] The DNA analyst explained the significance of this finding "is that Deandre Maggette cannot be excluded as a contributor to the DNA profile from the vaginal samples." (Trans. at 361). This witness further testified to the correlative statistic included in her report of one in 5,105,000,000,000,000 unrelated individuals, which "means that [she] would have to test that many people before [she] would find one person with a DNA profile that was similar to this in this case. This is a couple times the world's population." (Id.).

being used to extract Maggette's semen from a condom and to place it inside M.F.'s vagina. Notwithstanding the fact that M.F.'s testimony alone, if believed by the trier of fact, clearly establishes the origin of Maggette's semen in her vagina, there is nothing in the record to support Maggette's hypothesis of an alternate source and/or method of introduction of his semen into M.F.'s vagina. Moreover, such a consideration invokes a weight of the evidence rather than a sufficiency determination which remained in the hands of the trier of fact.

{¶20} Accordingly, we are not persuaded by Maggette's argument on appeal that M.F.'s testimony and his semen found on M.F. vaginal swab were insufficient to establish that he engaged in sexual conduct with M.F. After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of unlawful sexual conduct with a minor proven beyond a reasonable doubt.

*Sexual Imposition*

{¶21} Maggette also argues that there was insufficient evidence presented to support his conviction for sexual imposition. In Count Two, Maggette was charged with sexual imposition, in violation of R.C. 2907.06(A)(4), which states:

> **(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:**

* * *

**(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.**

{¶22} At trial, the prosecution presented the testimony of C.C. to establish the essential elements of the sexual imposition charge. C.C. explained she became acquainted with Maggette through B.G., her half-sister.[2] As previously mentioned, Maggette was B.G.'s boyfriend. On April 9, 2015, Maggette was staying with B.G. at her mother's home in Fostoria. C.C., who was fourteen-years-old at the time, also resided in the home. C.C. claimed Maggette knew her age because B.G. told him and he also knew she attended high school. C.C. recalled Maggette approaching her and informing her of his intentions to sleep in her bedroom that night. B.G. was occupied in the bathroom styling her hair when this exchange occurred. According to C.C., Maggette had asked to sleep in her bed on numerous occasions.

{¶23} On this occasion, C.C. again refuted Maggette's advances, walked into her bedroom, and sat on her bed. Maggette followed C.C., "flopped" down on her bed, and began touching her side. (Trans. at 295). C.C. testified that Maggette then stuck his hand down her pants inside her underwear and touched her bare buttock

---

[2] C.C. is B.G.'s half-sister on B.G.'s mother's side and M.F. is B.G.'s half-sister on her father's side.

on the right side. C.C. explained that she felt uncomfortable and immediately got up to tell her mother what had happened. C.C.'s mother confronted Maggette and told him to leave the home. C.C.'s step-father reported the incident to law enforcement. Maggette subsequently moved into B.G.'s father's home in Tiffin where M.F. resided.

{¶24} On appeal, Maggette disputes the sufficiency of the evidence presented by the prosecution to establish sexual contact. Section 2907.01(B) of the Revised Code defines "sexual contact" to mean "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Maggette argues that the "evidence adduced at trial did not show that any of the brief touching was for a sexual purpose or to elicit a sexual response or to fulfill either [C.C.] or Appellant Maggette sexually." (Appt. Brief at 9). However, as it has been previously explained, "in the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the 'type, nature and circumstances of the contact, along with the personality of the defendant.' " *State v. Haskell*, quoting *State v. Cobb*, 81 Ohio App.3d 179, 185 (9th Dist.1991).

{¶25} Here, C.C. testified that Maggette repeatedly asked to sleep in her bed, which she refused. She testified that during the incident in question she again

refused to allow him to sleep in her bed, but Maggette followed her into her bedroom, laid on her bed and began caressing her side. C.C. further testified that he then stuck his hand down her pants inside her underwear and touched her bare buttock. She explained feeling immediately uncomfortable with Maggette's conduct and that no one else was present when Maggette touched her in this manner. Notwithstanding the fact that it is difficult to imagine any purpose for Maggette placing his hand down C.C.'s underwear and touching her bare buttock other than for the purpose of sexual arousal or gratification, the trier of fact was free to believe or disbelieve any or all of C.C.'s testimony and to make reasonable inferences from that testimony as to the purpose of Maggette's contact.

**{¶26}** After viewing this evidence in a light most favorable to the prosecution, we conclude that the trial court could have reasonably inferred that Maggette touched C.C. for the purpose of sexually arousing or gratifying either himself or C.C. Therefore, the trial court did not err in finding that the State met its burden of proving the essential elements of sexual imposition beyond a reasonable doubt. For all these reasons, we conclude the trial court did not err in overruling Maggette's Crim.R. 29 motion for acquittal on the basis of insufficient evidence. Maggette's first assignment of error is overruled.

*Second and Third Assignments of Error*

**{¶27}** We elect to address these assignments of error together due to the fact that the arguments and considerations raised therein are intertwined.

**{¶28}** Maggette claims that the trial court failed to make adequate findings in imposing his sentence consistent with Crim.R. 32(A)(4). Specifically, Maggette argues that the trial court did not engage in the proper analysis or give sufficient reasons to support the imposition of the sentence. Criminal Rule 32(A) states, in relevant part:

> **Sentence shall be imposed without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposing sentence, the court shall do all of the following:**
>
> **\* \* \***
>
> **(4) In serious offenses, state its statutory findings and give reasons supporting those findings, if appropriate.**

**{¶29}** It is well-established that the statutes governing felony sentencing no longer require the trial court to make certain findings before imposing a maximum sentence. *See e.g.*, *State v. Dixon*, 2d Dist. Clark No. 2015-CA-67, 2016-Ohio-2882, ¶ 14 ("Unlike consecutive sentences, the trial court was not required to make any particular "findings" to justify maximum prison sentences."); *State v. Hinton*, 8th Dist. Cuyahoga No. 102710; 2015-Ohio-4907, ¶ 9 (The law no longer requires the trial court to make certain findings before imposing a maximum sentence).

{¶30} Rather the pertinent inquiry in this instance is whether the trial court's imposition of maximum sentences on both counts is contrary to law. *State v. Barrera*, 3d Dist. Putnam No. 12-12-01, 2012-Ohio-3196, ¶ 20 ("A trial court's sentence will not be disturbed on appeal absent a defendant's showing by clear and convincing evidence that the sentence is unsupported by the record or otherwise contrary to law."). A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *State v. Caraballo*, 8th Dist. Cuyahoga No. 100354, 2014-Ohio-2641, ¶ 6–7.

{¶31} Trial courts have full discretion to impose any sentence within the statutory range. *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. Maggette was convicted of a violation of R.C. 2907.04(A),(B)(3), a felony of third degree, and of a violation of R.C. 2907.06(A)(4),(C), a third degree misdemeanor. The relevant prison sentence range for the unlawful sexual conduct with a minor offense is between twelve and sixty months. R.C. 2929.14(A)(3). The relevant jail term for the sexual imposition offense is "not more than sixty days." R.C. 2929.24(A)(3). The trial court's sentences for both counts clearly fall within the statutory range. Therefore, a sentence imposed within the statutory range is

"presumptively valid" if the court considered applicable sentencing factors. *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15,

**{¶32}** Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the sentencing court is not required to "state on the record that it considered the statutory criteria or discuss[ed] them." *State v. Polick*, 101 Ohio App.3d 428, 431 (4th Dist.1995). A trial court's statement that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *State v. Abrams*, 8th Dist. Cuyahoga No. 103786, 2016-Ohio-4570, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 18.

**{¶33}** Here, the trial court stated the following in its sentencing entry pronouncing Maggette's sentence: "Defendant was afforded all rights pursuant to Criminal R. 32. The Court has considered the record, oral statements, victim impact statement, as well as the principles and purposes of felony sentencing under Ohio Revised Code Section 2929.11, and has balanced the seriousness and recidivism factors [under] Ohio Revised Code Section 2929.12. The Court has also considered the overriding purposes of misdemeanor sentencing under Ohio Revised Code 2929.21 and has reviewed the considerations under Revised Code Section 2929.22." (Doc. No. 31 at 1-2).

**{¶34}** Maggette further claims in his third assignment of error that his sixty-day jail term for sexual imposition is contrary to law because the record fails to establish that his conduct is the "worst form of the offense" and the trial court failed to make a specific finding to that effect. Section 2929.22(C) of the Revised Code states: "Before imposing a jail term as a sentence for a misdemeanor, a court shall consider the appropriateness of imposing a community control sanction or a combination of community control sanctions under sections 2929.25, 2929.26, 2929.27, and 2929.28 of the Revised Code. A court may impose the longest jail term authorized under section 2929.24 of the Revised Code only upon offenders who commit the worst forms of the offense or upon offenders whose conduct and response to prior sanctions for prior offenses demonstrate that the imposition of the longest jail term is necessary to deter the offender from committing a future crime."

**{¶35}** Initially, we note that "[t]here is no requirement that a trial court specifically state its reasons on the record when sentencing on misdemeanor offenses." *State v. Dexer Townsend*, 5th Dist. Delaware No. 09-CAA-11-0096; 2010-Ohio-4417, ¶ 26. Nevertheless, we conclude that the record supports the trial court's imposition of the maximum sentence. Maggette had a prior criminal record in other jurisdictions beginning in 1998 consisting of several felonies some of which involved firearms and included aggravated assault, Domestic Battery and violations of protections orders. Moreover, the facts before the trial court in this case

demonstrated that Maggette preyed upon two young teenagers both of whom he knew to be more than twenty-two years his junior, and that when given the opportunity his conduct with the victims escalated from unwanted sexual touching to engaging in an extensive sexual relationship. Therefore, we do not find that the trial court erred in determining a maximum sentence on Maggette's sexual imposition conviction was warranted.

{¶36} In sum, the record reflects that Maggette's sentence was within the permissible statutory range and the judgment entry of sentence indicates that the trial court properly considered the criteria found in R.C. 2929.11 and R.C. 2929.12 as well as the criteria for misdemeanor sentencing in R.C. 2929.21 and R.C. 2929.22. Since the record establishes that trial court considered all required sentencing statutes, we conclude the maximum sentences on Maggette's unlawful sexual conduct with a minor and sexual impositions charges are not contrary to law. Accordingly, we overrule Maggette's second and third assignments of error.

{¶37} Based on the foregoing, the assignments of error are overruled and the judgment and sentence is affirmed.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**