[Cite as *State v. Mendenhall*, 2023-Ohio-3297.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 6-23-01

      v.

TRISTAN ALAN MENDENHALL,         O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20222038

Judgment Affirmed

Date of Decision: September 18, 2023

APPEARANCES:

    *Emily P. Beckley* **for Appellant**

    *McKenzie J. Klingler* **for Appellee**

**MILLER, P.J.**

{¶1} Defendant-appellant, Tristan Alan Mendenhall ("Mendenhall") appeals the December 7, 2022 judgment of the Hardin County Court of Common Pleas determining he violated the terms of his community control and imposing a prison term. For the reasons that follow, we affirm.

*Background*

{¶2} On April 13, 2022, the Hardin County Grand Jury indicted Mendenhall on six counts: Counts One and Two of disrupting public services in violation of R.C. 2909.04(A)(1), (C), fourth-degree felonies; Count Three of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony; Counts Four and Five of domestic violence in violation of R.C. 2919.25(A), (D)(4), third-degree felonies; and Count Six of theft in violation of R.C. 2913.02(A), (B)(2), a fifth-degree felony. Mendenhall appeared for arraignment on May 3, 2022 and entered not guilty pleas.

{¶3} Pursuant to a negotiated-plea agreement, on June 2, 2022, Mendenhall appeared for a change-of-plea hearing where he entered guilty pleas to Counts One, Three, Four, and Six. In exchange, the State agreed to recommend dismissal of the remaining counts. The trial court accepted Mendenhall's guilty pleas, found him guilty of the four counts and, at the request of the State, dismissed the remaining counts. The trial court ordered a presentence investigation.

{¶4} On August 8, 2022, Mendenhall appeared for sentencing. Pursuant to the parties' recommendation, the trial court sentenced Mendenhall to five years of community control. As a condition of his community control, Mendenhall was ordered to complete a treatment program at the W.O.R.T.H. Center, a community-based-correctional facility ("CBCF"). He was also ordered to complete the Hardin County Recovery Court ("Recovery Court") program and follow all terms and recommendations therein which also included completing treatment at a CBCF.

{¶5} On or about November 3, 2022, Mendenhall's supervising officer was notified Mendenhall was being unsuccessfully discharged from the W.O.R.T.H. Center. Thereafter, on November 9, 2022, the trial court filed an entry suspending Mendenhall's participation in Recovery Court. In its judgment entry, the trial court stated the Recovery Court treatment team recommended the termination of Mendenhall's participation in the program due to an alleged violation of the terms of the Recovery Court program. On November 22, 2022, the State filed a motion requesting the trial court revoke Mendenhall's community-control supervision due to his violation of the terms of his community control, specifically, his alleged violation of the terms of his participation in the Recovery Court program and his unsuccessful completion of a CBCF.

{¶6} On December 7, 2022, a hearing was held on Mendenhall's alleged violation of community control. At the hearing, Mendenhall denied violating the

terms of his supervision. The State introduced evidence and rested. Mendenhall rested without introducing evidence. At the conclusion of the hearing, the trial court found Mendenhall violated the terms of his community-control supervision and his participation in Recovery Court was terminated.

{¶7} The trial court proceeded immediately to sentencing and sentenced Mendenhall to 8 months in prison on Count One, 12 months in prison on Count Three, 30 months in prison on Count Four, and 10 months in prison on Count Six. The trial court further ordered the prison terms be served consecutively for an aggregate term of 60 months in prison. Later that day, the trial court filed its attendant judgment entry.

{¶8} On January 3, 2023, Mendenhall filed a notice of appeal. He raises three assignments of error for our review. For ease of discussion, we will first address Mendenhall's third assignment of error.

**Third Assignment of Error**

**The trial court erred in revoking Appellant's community control.[1]**

---

[1] Mendenhall's argument for this assignment of error consists of three sentences. He complains the State did not prove a community-control violation due to a confrontation error. The brief fails to specify the nature of this confrontation violation, provide adequate contentions with respect to the assignment of error, and fails to provide any argument, citations or authorities. We are only able to discern the basis of appellant's argument because he cites the transcript where trial counsel set forth the objection and argument challenging the State's evidence. We choose to address the assignment of error out of fairness and to provide resolution in this matter.

{¶9} In his third assignment of error, Mendenhall argues that the trial court erred by revoking his community control. Mendenhall alleges he was denied his constitutional right to confront and cross examine witnesses against him when the trial court admitted State's Exhibit 1, a letter from Mendenhall's case manager at the W.O.R.T.H. Center to Tyler Overly ("Overly"), Mendenhall's probation officer, indicating that Mendenhall was being unsuccessfully discharged from the W.O.R.T.H. Center due to aggressive behavior. (State's Ex. 1). While Mendenhall could not deny that he was removed from the W.O.R.T.H. Center program, he wanted to refute the allegations of aggressive behavior. Mendenhall alleges that, because the author of the letter did not testify at his community-control violation hearing, he was denied his constitution right to confront witnesses against him. We disagree.

{¶10} "The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that '"[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."'" *State v. Thomas*, 3d Dist. Marion No. 9-19-73, 2020-Ohio-5379, ¶ 17, quoting *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause. The similar provisions of Section 10, Article I of the Ohio Constitution "provide[ ] no greater

right of confrontation than the Sixth Amendment * * *." *State v. Self*, 56 Ohio St.3d 73, 79 (1990).

{¶11} However, Evid.R. 101(D)(3) expressly provides that the rules of evidence do not apply to "proceedings with respect to community control sanctions." "A probation revocation hearing is not a formal criminal trial but is '"an informal hearing structured to assure that the finding of a * * * [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * [probationer's] behavior."'" *State v. Reese*, 8th Dist. Cuyahoga No. 109055, 2020-Ohio-4747, ¶ 14, quoting *State v. Hylton*, 75 Ohio App.3d 778, 781 (4th Dist.1991), quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972).

{¶12} Nonetheless, "[a] defendant charged with violating community control and facing imprisonment is entitled to due process of the law under the Fourteenth Amendment to the United States Constitution." *State v. Theisen*, 4th Dist. Athens No. 22CA8, 2023-Ohio-2412, ¶ 20, citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 1759 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593 (1972); *State v. Boling*, 4th Dist. Athens No. 01CA30, 2001 WL 1646691, *2 (Dec. 17, 2001); Crim.R. 32.3. Specifically, at a final hearing on the alleged violation of community control, before a defendant can be sent to prison for violating community control, the defendant is entitled to the following procedures:

"(a) written notice of the claimed violations of [community control];
(b) disclosure to the [defendant] of evidence against him; (c)
opportunity to be heard in person and to present witnesses and
documentary evidence; (d) the right to confront and cross-examine
adverse witnesses (unless the hearing officer specifically finds good
cause for not allowing confrontation); (e) a 'neutral and detached'
hearing body * * * ; and (f) a written statement by the factfinders as
to the evidence relied on and reasons for [finding a community-
control violation]."

*Gagnon* at 786, quoting *Morrissey* at 489.

{¶13} At the December 7, 2022 hearing, the State called Overly, Mendenhall's supervising community-control officer. (Dec. 7, 2022 Tr. at 6-7). The State introduced State's Exhibit 1, a letter written to Overly by Emily Aufderhaar ("Aufderhaar"), Mendenhall's case manager at the W.O.R.T.H. Center, stating that Mendenhall is being "unsuccessfully discharged" from the facility "for repeated verbal and physical aggression." (*Id.* at 9); (State's Ex. 1). Overly stated that, as part of his responsibilities as a community-control officer, he receives such letters with respect to his supervisees. (Dec. 7, 2022 Tr. at 9-10). The State moved for the admission of State's Exhibit 1, and Mendenhall's trial counsel objected on the basis of hearsay, lack of foundation, and violation of Mendenhall's right to confront Aufderhaar. (*Id.* at 10-11). The trial court admitted State's Exhibit 1 over Mendenhall's objection. (*Id.* at 11).

{¶14} Overly stated that around November 3, 2022, he learned Mendenhall was unsuccessfully discharged from the W.O.R.T.H. Center. (*Id.*). Overly

indicated that successful completion of the program at the W.O.R.T.H. Center was a term of Mendenhall's community control; however, Mendenhall failed to complete the program. (*Id.* at 11-12). According to Overly, after being discharged from the W.O.R.T.H. Center, Mendenhall was preliminarily terminated from Recovery Court. (*Id.* at 12). Overly stated that completion of the Recovery Court program was a term of Mendenhall's community control. (*Id.*). Thus, according to Overly, Mendenhall violated the terms of his community control by (1) his unsuccessful discharge from the W.O.R.T.H. Center and (2) his termination from Recovery Court. (*Id.*).

{¶15} Overly also specified that he was responsible for retrieving Mendenhall from the W.O.R.T.H. Center and that the W.O.R.T.H. Center staff released Mendenhall to him because he was being discharged. (Dec. 7, 2022 Tr. at 14).

{¶16} Mendenhall was given the opportunity to cross examine Overly, but declined to do so. (*Id.* at 12-14). Mendenhall did not present any evidence or witnesses. (*Id.* at 14-15).

{¶17} "'The introduction of hearsay evidence into a [community-control]-revocation hearing is reversible error when that evidence is the only evidence presented and is crucial to a determination of a [community-control] violation.'" *State v. Johnson*, 4th Dist. Meigs No. 14CA10, 2015-Ohio-1373, ¶ 25, quoting *State*

*v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, ¶ 21 (6th Dist.). After reviewing the evidence adduced at the hearing, it is evident the trial court did not rely exclusively on hearsay evidence. Notably, the State presented testimony in addition to State's Exhibit 1 to demonstrate that Mendenhall violated the terms of his community control. For instance, Overly testified he picked up Mendenhall from the W.O.R.T.H. Center following his discharge. *See State v. Newsome*, 4th Dist. Hocking No. 17CA2, 2017-Ohio-7488, ¶ 22-23. Furthermore, we note that Mendenhall does not contest that he was discharged from the W.O.R.T.H. Center or that he did not successfully complete the treatment program, rather he argues he did not actually engage in the repeated violence and aggression referenced in State's Exhibit 1. However, the reason for his termination from the treatment program at the W.O.R.T.H. Center is not necessarily relevant to the trial court's determination that he violated the terms of his community control by not completing (1) the treatment program at the W.O.R.T.H. Center and (2) Recovery Court, both of which were specific conditions of his community control.

{¶18} Moreover, State's Exhibit 1 is not hearsay. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). "Only testimonial hearsay implicates the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 185. "If the statement is

nontestimonial, it is merely subject to the regular admissibility requirements of the hearsay rules." *State v. Peeples*, 7th Dist. Mahoning No. 07 MA 212, 2009-Ohio-1198, ¶ 19.

{¶19} Here, State's Exhibit 1 was introduced not for the truth of its contents, i.e. that Mendenhall engaged in aggressive behavior, but to demonstrate that Mendenhall was terminated from the W.O.R.T.H. Center and how Overly was informed of Mendenhall's discharge from the program. Accordingly, the State relied on State's Exhibit 1 to demonstrate how Overly became aware of Mendenhall's discharge from the W.O.R.T.H. Center rather than to demonstrate the veracity of Aufderhaar's statement that Mendenhall engaged in repeated verbal and physical aggression. Overly testified, based on his personal knowledge, that Mendenhall was unsuccessfully discharged from the W.O.R.T.H. Center.

{¶20} Moreover, State's Exhibit 1 fell within the business record exception to hearsay. "Documents that are 'neither prepared for the primary purpose of accusing a targeted individual nor prepared for the primary purpose of providing evidence in a criminal trial [are] nontestimonial, and [their] admission into evidence at trial under Evid.R. 803(6) as a business record does not violate a defendant's Sixth Amendment confrontation rights.'" *State v. Shepherd*, 3d Dist. Hardin Nos. 6-19-02 and 6-19-03, 2020-Ohio-3915, ¶ 32, quoting *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, syllabus. "Generally, business records are

nontestimonial because they are * * * typically not prepared for litigation." *Id.* citing *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 34. Here, it appears the primary purpose of State's Exhibit 1 was for the W.O.R.T.H. Center to inform Mendenhall's supervising officer of Mendenhall's progress and status in the treatment program. Overly testified that he regularly receives such communication from the W.O.R.T.H. Center with respect to his supervisees and that, as part of his duties, he retains such communication as part of the file he maintains on each person he supervises. Thus, State's Exhibit 1 is a business record, which is nontestimonial in nature. *See Shepherd* at ¶ 33-34.

**{¶21}** Accordingly, for the aforementioned reasons, there is no Confrontation-Clause Violation.

**{¶22}** Mendenhall's third assignment of error is overruled.

## First Assignment of Error

**Appellant's [sentence] was not supported by sufficient evidence.**

## Second Assignment of Error

**The trial court erred in sentencing Appellant to consecutive sentences.**

**{¶23}** In his first assignment of error, Mendenhall argues that the trial court erred by sentencing him to a prison term. Specifically, Mendenhall alleges the trial court did not properly weigh the recidivism factors. In his second assignment of

error, Mendenhall argues the consecutive sentences imposed by the trial court were not supported by the record. For the reasons that follow, we disagree.

*Standard of Review*

**{¶24}** Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Relevant Authority: Felony Sentencing*

**{¶25}** "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9. A sentence imposed within the statutory range is generally valid so long as the trial court considered the applicable statutory policies that apply to every felony sentencing, including those contained in R.C. 2929.11, and the sentencing factors of 2929.12. *See State v. Watts*, 3d Dist. Auglaize No. 2-20-10, 2020-Ohio-5572, ¶ 10 and 14; *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31.

{¶26} R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶27} "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). In addition, the trial court must consider "the factors set forth in [R.C. 2929.12(F)] pertaining to the offender's service in the armed forces of the United States." R.C. 2929.12(A). "'A sentencing court has broad discretion to determine

the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Smith* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

*Analysis: Felony Sentencing*

**{¶28}** The trial court sentenced Mendenhall to 12 months and 30 months in prison for third-degree felony tampering with evidence and domestic violence respectively; 8 months in prison for fourth-degree felony disrupting public services; and 10 months in prison for fifth-degree-felony theft. Thus, Mendenhall's sentences fall within the respective statutory ranges. *See* R.C. 2929.14(A)(3)(b); R.C. 2929.14(A)(4); R.C. 2929.14(A)(5).

**{¶29}** The record reflects that the trial court considered R.C. 2929.11 and 2929.12 when fashioning Mendenhall's sentence. In its judgment entry of sentence, the trial court indicated that "a prison sentence * * * is consistent with the purposes and principles of sentencing under Ohio Revised Code Section 2929.11 because a prison sentence is reasonably necessary to punish the offender and to deter, rehabilitate, and incapacitate the offender in order to protect the public from future crime, and would not place an unnecessary burden on governmental resources." (Doc. No. 52). *See* R.C. 2929.11(A). Additionally, during sentencing, the trial court addressed several of the seriousness and recidivism factors contained in R.C. 2929.12. (Dec. 7, 2022 Tr. at 19-22). Therefore, because Mendenhall's prison

sentence is within the applicable statutory range and the record supports that the trial court fulfilled its obligation of considering R.C. 2929.11 and 2929.12, Mendenhall's individual sentences are valid. *See Watts*, 2020-Ohio-5572, at ¶ 14.

{¶30} Yet, Mendenhall argues the trial court improperly weighed the recidivism factors in light of his desire to seek substance-abuse treatment to address his underlying issues. Mendenhall contends the trial court erred by sentencing him to prison rather than continuing him on community control and considering another CBCF or allowing him to complete Recovery Court. However, pursuant to the agreement of the parties, the trial court did initially sentence Mendenhall to community control with the special requirements that he complete a treatment program at the W.O.R.T.H. Center and complete Recovery Court. However, the record indicates that Mendenhall was terminated from the treatment program at the W.O.R.T.H. Center and, as a result, was unsuccessfully terminated from Recovery Court.

{¶31} At the December 7, 2022 hearing, the trial court detailed the efforts that it previously made at rehabilitating Mendenhall, including a prior placement in the W.O.R.T.H. program. The trial court commented, "[w]e tried very hard" and "went way over the mark in trying to bring him into Recovery Court just to try to help him." (Dec. 7, 2022 Tr. at 20). However, the trial court remarked that "all our efforts were unavailing." (*Id.*).

**{¶32}** Further, although "R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds 'the record does not support the sentencing court's findings under' certain specified statutory provisions[,] * * * R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a)." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 28. Moreover, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Thus, R.C. 2953.08(G)(2) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. "[A]n appellate court errs if it * * * modifies or vacates a sentence 'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.'" *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17, quoting *Jones* at ¶ 29.

**{¶33}** Accordingly, even if we were to agree with Mendenhall that his sentence is not supported by the record under R.C. 2929.11 and 2929.12, which we do not, we could not vacate or modify his sentence on that basis. As discussed above, Mendenhall's prison sentence is within the applicable statutory range, and it is clear the trial court considered R.C. 2929.11 and 2929.12 when fashioning his sentence. Hence, Mendenhall's prison sentence is not clearly and convincingly

contrary to law, and it must therefore be affirmed. *See State v. Slife*, 3d Dist. Auglaize No. 2-20-17, 2021-Ohio-644, ¶ 17.

**{¶34}** Next, Mendenhall argues that the trial court erred by ordering the sentences in the instant case to be served consecutively to each other.

*Relevant Authority: Consecutive Sentencing*

**{¶35}** "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides:

> (4) * * * [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶36}** R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record when imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*

**{¶37}** The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

*Analysis: Consecutive Sentencing*

**{¶38}** Mendenhall does not argue that the trial court failed to make the requisite consecutive-sentencing findings under R.C. 2929.14(C)(4). Rather, Mendenhall contends the record does not support the trial court's findings.

**{¶39}** At the sentencing hearing, the trial court stated:

The Court will find that consecutive sentencing is appropriate, that two or more of the events were committed as a course of action, and that a single prison term would not be appropriate and would not address adequately the seriousness of his conduct and danger that he poses to the public.

Further, the Court will find that the defendant has a history of criminal conduct which demonstrates that consecutive sentencing is necessary. The Court will, therefore, order that the 8-month, 12-month, 30-month, and 10-month term[s] of imprisonment run consecutive for an aggregated term of 60 months with the Ohio Department of Rehabilitation and Correction.

(Dec. 7, 2022 Tr. at 23). The trial court memorialized those findings in its sentencing entry. Accordingly, the record reflects that the trial court made the appropriate R.C. 2929.14(C)(4) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry.

**{¶40}** Nonetheless, Mendenhall summarily argues that his consecutive sentences are not supported by the record because the charges stemmed from a single incident. (Appellant's Brief at 11). Mendenhall has failed to argue specifically how his consecutive sentences are not supported by the record. Having found no error in the trial court's imposition of consecutive sentences, we decline to root out any possible argument for him. *See* App.R. 16(A)(7).

**{¶41}** Mendenhall's first and second assignments of error are overruled.

*Conclusion*

**{¶42}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Hardin County Court of Common Pleas.

***Judgment Affirmed***

**WALDICK and ZIMMERMAN, J.J., concur.**

**/jlr**